

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KHOANH A. LAM,<br><br>    Petitioner,<br><br>    v.<br><br>KRISTI NOEM, *et al.*,<br><br>    Respondents. | Case No. 5:25-cv-03344-CV (RAO)<br><br>**ORDER GRANTING IN PART APPLICATION FOR TEMPORARY RESTRAINING ORDER [3]** |

    On December 11, 2025, Petitioner Khoanh A. Lam ("Petitioner") filed an Application for Temporary Restraining Order and Preliminary Injunction ("Application"). Doc. # 3 ("App."). On December 12, 2025, Respondents filed an Opposition, and on December 15, 2025, Petitioner filed a Reply. Doc. # 7 ("Opp."); Doc. # 9 ("Reply"). Having reviewed and considered all the briefing filed with respect to the Motion, the Court finds that oral argument is not necessary to resolve the Motion, *see* Fed. R. Civ. P. 78(b); Local Rule 7-15; *Willis v. Pac. Mar. Ass'n*, 244 F.3d 675, 684 n.2 (9th Cir. 2001), and concludes as follows.

I.   **INTRODUCTION**

    On December 11, 2025, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. section 2241 (the "Petition") against the Secretary of the Department

of Homeland Security ("DHS"), Kristi Noem; the Attorney General of the United States, Pamela J. Bondi; the Field Office Director of the Los Angeles Bureau of Immigration and Customs Enforcement Office ("ICE"), Thomas Giles; the Assistant Field Office Director of the Adelanto Detention Facility, James Pilkington, and Warden, Geo Group Inc., Adelanto Detention Facility (collectively, "Respondents"). Doc. # 1 ("Pet.").

On December 12, 2025, Petitioner filed the Application, seeking a Temporary Restraining Order ("TRO") that would require Respondents to (1) immediately release Petitioner from custody; (2) refrain from removing Petitioner from the United States or taking him from the Central District of California; (3) restore Petitioner to the status quo prior to his detention by reinstating his prior order of supervision; and (4) show cause why Petitioner's application for a preliminary injunction should not be granted. App. at 1–2.

II.  **FACTUAL BACKGROUND**

Petitioner was born in Vietnam, and fled to the United States as a refugee in 1979 when he was 11 years old. Pet. at 4. In 2005, he was convicted of conspiracy and attempted murder, and upon his release from prison in 2021, he was detained by ICE. *Id.* On October 21, 2021, Petitioner was ordered removed from the United States through a final order of removal. *Id.*; Doc. # 1-1 ("Lam Decl.") ¶ 5.

While he was detained, Petitioner signed the self-declaration form required to apply for a passport from Vietnam, but he never received the passport. Pet. at 4. He was released on supervision on January 18, 2022, and while on supervision, he attempted to obtain a passport through a travel agency. *Id.* Months later, no passport had issued. *Id.*

After Petitioner missed one supervision check-in, he was re-arrested on August 24, 2025. *Id.* On September 15, 2025, he again signed the self-declaration form required to apply for a Vietnamese passport. *Id.* To date, Petitioner has not received a passport. *Id.*

III. **LEGAL STANDARD**

The standard for issuing a temporary restraining order and preliminary injunction under Federal Rule of Civil Procedure 65 is the same. *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020); *see also Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush &*

*Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that a temporary restraining order and preliminary injunction involve "substantially identical" analysis). Like a preliminary injunction, a temporary restraining order is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

Under *Winter*, a plaintiff seeking a temporary restraining order must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014) (citing *Winter*, 555 U.S. at 20). Courts in this circuit also employ "an alternative 'serious questions' standard, also known as the 'sliding scale' variant of the *Winter* standard," *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021), in which the four *Winter* elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a temporary restraining order may be warranted where there are "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff," so long as the other *Winter* factors are also met. *Id.* at 1132.

IV. **DISCUSSION**

Petitioner argues that he is entitled to be released from custody for four reasons. First, he argues that there is no good reason to believe he will be deported to Vietnam in the reasonably foreseeable future, and therefore he should be released pursuant to *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). Second, he argues that the Government violated due process and INA regulations by reimprisoning him without notice or an opportunity to be heard. Third, he argues that to the extent ICE intends to remove him to a third country, that would violate the Due Process Clause. And fourth, he argues that removal to a third country where he might face imprisonment violates the constitutional prohibition on "punitive" removal practices.

As to Petitioner's third and fourth grounds for relief, Petitioner's arguments related to his removal to a third country are purely speculative. *See generally*, Pet. And it is well settled that "speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

Therefore, the Court focuses the remainder of its analysis on Petitioner's first two grounds.

### A. Likelihood of Success on the Merits

As an initial matter, Respondents assert that the Court lacks jurisdiction to hear the instant Petition under 8 U.S.C. § 1252(g). However, it is well settled that Courts have "jurisdiction to decide a purely legal question that does not challenge the Attorney General's discretionary authority[,] . . . even if the answer to that legal question [] forms the backdrop against which the Attorney General later will exercise discretionary authority." *Ibarra-Perez v. United States*, 154 F.4th 989, 996 (9th Cir. 2025) (internal quotation marks, citations, and alterations omitted); *Walters v. Reno*, 145 F.3d 1032, 1052 (9th Cir. 1998). Here, "because Petitioner challenges the lawfulness of his detention during the pendency of his removal proceedings, it is not a challenge to one of the 'three discrete events along the road to deportation' that § 1252(g) applies to." *Rodriguez Cabrera v. Mattos*, No. 2:25-cv-01551-RFB-EJY, 2025 WL 3072687, at *7 (D. Nev. Nov. 3, 2025) (citing *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482) (1999)); *see Phakeokoth v. Noem*, No. 3:25-cv-02817-RBM-SBC, 2025 WL 3124341, at *3 (S.D. Cal. Nov. 7, 2025) ("Here, Petitioner does not challenge the legitimacy of his September 2004 order of removal. Rather, Petitioner challenges the legality of his present detention which does not require judicial review of ICE's discretionary authority to decide 'when' or 'whether' to execute a removal order."). Therefore, § 1252(g) does not deprive the court of jurisdiction.

i. <u>Removal to Vietnam in the Reasonably Foreseeable Future</u>

First, Petitioner argues that the Due Process Clause "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). And that because of that constitutional limitation, the immigration detention statute "does not permit indefinite detention." *Id.*; *see* 8 U.S.C. § 1231 ("Section 1231").

Section 1231 provides that when a noncitizen is ordered removed from the United States, the Attorney General must effectuate removal within 90 days. 8 U.S.C. § 1231(a)(1)(A). Detention is mandatory during the 90-day removal period. *Id.* at § 1231(a)(2)(A). If the removal period expires before the noncitizen has been removed, section 1231(a)(6) authorizes the Attorney General to continue the "post-removal-period detention . . . to certain categories of aliens who have been ordered removed, namely, inadmissible aliens, criminal aliens, aliens who have violated their nonimmigrant status conditions, and aliens removable for certain national security or foreign relations reasons, as well as any alien 'who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal.'" *Zadvydas*, 533 U.S. at 688; *see* 8 U.S.C. § 1231(a)(6).

Petitioner relies on *Zadvydas*, which held that a six-month period of detention was "presumptively reasonable," but that after the six-month period:

> once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* at 701. Petitioner argues that he has been detained for over six-months total, thus triggering *Zadvydas* and putting the burden on Petitioner to provide a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Respondents are silent as to whether the length of Petitioner's detention triggers *Zadvydas*, and seemingly accept that it does and go straight into the *Zadvydas* analysis.

However, 8 C.F.R. section 241.13(i)(1), which was enacted post-*Zadvydas*, provides an important change in how the time period is calculated. Specifically, the section provides that where a noncitizen violates a condition of release, they "may be continued in detention for an additional six months." 8 C.F.R. section 241.13(i)(1). Here, Petitioner was re-detained on August 24, 2025, because he violated a condition of release by missing a supervision check-in. Pet. at 4; Doc. # 7-1 ("Preciado Decl.") ¶¶ 14–15; Doc. # 7-2. Therefore, Respondents are able to detain Petitioner for an additional six months, beginning on August 24, 2025, which is presumed to be reasonable. Only after six months would the Court conduct the *Zadvydas* analysis regarding likelihood of removal. Because six months have not passed since August 24, 2025, the Court cannot find that Petitioner is likely to succeed on his claim that his detention violates the Due Process Clause in light of *Zadvydas*.

   ii. <u>Violation of Due Process Clause and INA Regulations</u>

Next, Petitioner argues that the Government re-detaining him without notice or an opportunity to be heard violates both the Due Process Clause and INA Regulations.

Federal regulations provide that where a noncitizen has been "released under an order of supervision," and has "violate[d] any of the conditions of release," they "may be returned to custody." 8 C.F.R. § 241.13(i)(1). "Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct **an initial informal interview promptly** after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he

or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." *Id.* § 241.13(i)(3) (emphasis added); *See also id.* § 241.4(l)(1) (stating that a post-removal alien "who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody . . . . Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.").

    Here, Petitioner was provided with a "Notice of Revocation of Release," which informs him that his revocation was due to his "failure to abide by one or more conditions of [his] prior order of supervision." However, it does not appear that Respondents provided Petitioner with an informal interview or afforded him an opportunity to be heard promptly after his return to custody. *See* Reply at 5–6.

    Because ICE failed to follow its own procedures and violated Petitioner's due process rights in re-detaining him without an opportunity to be heard (i.e., no informal interview), he has shown a likelihood of success on this claim. *See Delkash v. Noem*, No. 5:25-cv-01675-HDV-AGR, 2025 WL 2683988, at *5-6 (C.D. Cal. Aug. 28, 2025) (finding that government agencies are required to follow their own regulations and finding that a petitioner is likely to succeed on the merits of his claim where the government did not properly revoke his release pursuant to 8 C.F.R. §§ 241.4 and 241.3).[1]

---

[1] Respondents cite to *Sanchez v. Bondi*, No. 5:25-cv-02530-AB-DTB, 2025 U.S. Dist. LEXIS 196639, at *13 (C.D. Cal. Oct. 3, 2025) for the proposition that the failure to follow regulations does not negate the statutory authority provided by Section 1231. However, Respondents fail to note that a subsequent decision in the same case held that, upon supplemental briefing, "the Court is persuaded that the regulations constitute binding legal requirements for ICE's revocation process." *Sanchez v. Bondi*, No. 5:25-cv-02530-AB-DTB, 2025 WL 3651899, at *3 (C.D. Cal. Dec. 5, 2025).

**B.     Irreparable Harm**

Petitioner is likely to suffer irreparable harm in the absence of a TRO because he is being detained, which constitutes a loss of liberty that is irreparable. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).

**C.     Balance of the Equities and Public Interest**

Where the government is the opposing party, balancing of the equities and the public interest merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Thus, the Court asks whether any significant "public consequences" would result from issuing the preliminary injunction. *Winter*, 555 U.S. at 24.

As other courts have recognized, "the public has a strong interest in upholding procedural protections against unlawful detention." *Vargas v. Jennings*, No. 20-CV-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020). And the government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Accordingly, given the Court's determination that Petitioner is likely to succeed on the merits of his claim regarding his detention violating INA regulations (not providing him an informal interview), and in light of the irreparable harms inherent in the deprivation of constitutional rights and in ICE detention, this factor weighs in favor of Petitioner. Further, Respondents cannot claim any harm in following their own regulations.

**D.     Appropriate Remedy**

While the Court has found that Petitioner has made the requisite showing for the Court to grant a TRO, it cannot grant Petitioner's requested relief in full. Petitioner asks the Court to issue an order that would require Respondents to: (1) immediately release Petitioner from custody; (2) refrain from removing Petitioner from the United States or taking him from the Central District of California; (3) restore Petitioner to the status quo

prior to his detention by reinstating his prior order of supervision; and (4) show cause why Petitioner's application for a preliminary injunction should not be granted. App. at 1–2.

For the reasons described above, because the Court has found that Petitioner has not shown a likelihood of success as to his claim that his detention violates the Due Process Clause in light of *Zadvydas*, it will not order his immediate release at this time.

However, because Petitioner is being detained without Respondents following the proper procedure laid out in the Federal Regulations, the Court will order that Respondents are enjoined from continuing to detain Petitioner unless he is provided with an informal interview to afford him an opportunity to respond to the reasons for revocation stated in the Notice of Revocation of Release dated August 24, 2025.

### E.  Bond

The security bond requirement of Federal Rule of Civil Procedure 65(c) is waived. The Court has "discretion as to the amount of security required, if any," and it "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).

## V.  CONCLUSION

For the foregoing reasons, the court GRANTS IN PART Petitioner's Application and ORDERS as follows:

1. Respondents are enjoined from continuing to detain Petitioner unless he is provided with an informal interview to afford him an opportunity to respond to the reasons for revocation stated in the Notice of Revocation of Release dated August 24, 2025, pursuant to 8 C.F.R. sections 241.13(i)(3) and 241.4(l)(1) within seven calendar days of the filing date of this Order.

2. To preserve the Court's jurisdiction, respondents are enjoined from transferring, relocating, or removing Petitioner outside of the Central District of California pending final resolution of this case or further order of the Court, unless executing a final order of removal issued against Petitioner.

3. This temporary restraining order shall take immediate effect and expires at 5:00 p.m. PT on January 1, 2026. The temporary restraining order may be extended for good cause or upon Respondents' consent.

4. Respondents are ordered to show cause why a preliminary injunction should not issue. *See* C.D. Cal. L. R. 65-1. Respondents must file any written response to the Order to Show Cause no later than December 26, 2025. Failure to file a response by this deadline shall be deemed as consent to the granting of a Preliminary Injunction. Petitioner shall file a reply no later than December 30, 2025.

5. The Court shall decide, after reviewing the parties' papers, whether to hold a hearing on the Order to Show Cause or to take the Order to Show Cause under submission.

**IT IS SO ORDERED.**

Dated: 12/18/25

*Cynthia Valenzuela*
HON. CYNTHIA VALENZUELA
UNITED STATES DISTRICT JUDGE