UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KHOANH A. LAM,<br><br>            Petitioner,<br><br>     v.<br><br>KRISTI NOEM, *et al.*,<br><br>            Respondents. | Case No. 5:25-cv-03344-CV (RAO)<br><br>**ORDER GRANTING IN PART APPLICATION FOR TEMPORARY RESTRAINING ORDER [14]** |

On January 27, 2026, Petitioner Khoanh A. Lam ("Petitioner") filed an Application for Temporary Restraining Order and Preliminary Injunction ("Application"). Doc. # 14 ("App."). On January 30, 2026, Respondents filed an Opposition, and on February 3, 2026, Petitioner filed a Reply. Doc. # 16 ("Opp."); Doc. # 17 ("Reply"). Having reviewed and considered all the briefing filed with respect to the Application, the Court finds that oral argument is not necessary to resolve the Application, *see* Fed. R. Civ. P. 78(b); Local Rule 7-15; *Willis v. Pac. Mar. Ass'n*, 244 F.3d 675, 684 n.2 (9th Cir. 2001), and concludes as follows.

## I. INTRODUCTION

On December 11, 2025, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. section 2241 (the "Petition") against the Secretary of the Department of Homeland Security ("DHS"), Kristi Noem; the Attorney General of the United States, Pamela J. Bondi; the Field Office Director of the Los Angeles Bureau of Immigration and Customs Enforcement Office ("ICE"), Thomas Giles; the Assistant Field Office Director of the Adelanto Detention Facility, James Pilkington, and Warden, Geo Group Inc., Adelanto Detention Facility (collectively, "Respondents"). Doc. # 1 ("Pet.").

On December 12, 2025, Petitioner filed his first ex parte application, seeking a Temporary Restraining Order ("TRO") that would require Respondents to immediately release Petitioner from custody, among other relief. Doc. # 3. The Court granted Petitioner's original ex parte application on December 18, 2025, ordering that:

    1. Respondents are enjoined from continuing to detain Petitioner unless he is provided with an informal interview to afford him an opportunity to respond to the reasons for revocation stated in the Notice of Revocation of Release dated August 24, 2025, pursuant to 8 C.F.R. sections 241.13(i)(3) and 241.4(l)(1) within seven calendar days of the filing date of this Order.

    2. To preserve the Court's jurisdiction, respondents are enjoined from transferring, relocating, or removing Petitioner outside of the Central District of California pending final resolution of this case or further order of the Court, unless executing a final order of removal issued against Petitioner.

Doc. # 10 at 9. The Court further issued an order to show cause why a preliminary injunction should not issue. Respondents did not respond to the order to show cause, and on December 31, 2025, the Court issued a preliminary injunction ordering that:

    1. Respondents are enjoined from continuing to detain Petitioner unless he was provided with an informal interview to afford him an

    opportunity to respond to the reasons for revocation stated in the Notice of Revocation of Release dated August 24, 2025, pursuant to 8 C.F.R. sections 241.13(i)(3) and 241.4(l)(1) within seven calendar days of the filing date of the TRO.

  2. To preserve the Court's jurisdiction, respondents are enjoined from transferring, relocating, or removing Petitioner outside of the Central District of California pending final resolution of this case or further order of the Court, unless executing a final order of removal issued against Petitioner.

Doc. # 11 at 2. Rather than granting Petitioner an informal interview, Petitioner was released from custody on December 27, 2025.

  Subsequently, on January 27, 2026, after Petitioner was re-detained by Respondents as described below, Petitioner filed the present Application, seeking a TRO requiring Respondents to immediately release petitioner from custody and restore Petitioner to the status quo prior to his detention by reinstating his prior order of supervision. App. at 2.

## II.   FACTUAL BACKGROUND

  Petitioner was born in Vietnam, and fled to the United States as a refugee in 1979 when he was 11 years old. Pet. at 4. In 2005, he was convicted of conspiracy and attempted murder, and upon his release from prison in 2021, he was detained by ICE. *Id.* On October 21, 2021, Petitioner was ordered removed from the United States through a final order of removal. *Id.*; Doc. # 1-1 ("Lam Decl.") ¶ 5.

  While he was detained, in 2021, Petitioner signed the self-declaration form required to apply for a passport from Vietnam, but he never received the passport. Pet. at 4. He was released on supervision on January 18, 2022, and while on supervision, he attempted to obtain a passport through a travel agency. *Id.* Months later, no passport had issued. *Id.*

  Over two years later, on August 24, 2025, after Petitioner missed one supervision check-in, he was re-arrested. *Id.* On September 15, 2025, he again signed the self-

declaration form required to apply for a Vietnamese passport. *Id.* To date, Petitioner has not received a passport. *Id.*

On December 18, 2025, the Court issued its TRO, enjoining Respondents from continuing to detain Petitioner unless he was provided with an informal interview.

On December 27, 2025, Respondents released Petitioner from custody, never having provided him an opportunity to respond to the reasons for the revocation of his supervision. Doc. # 12-1, ¶ 3.

On January 9, 2026, Petitioner attended a check-in with ICE, as instructed, but was detained. *Id.* ¶¶ 4–5. Since his January 9, 2026 detention, Petitioner has not been provided an explanation regarding the reasons for the revocation of his supervision, and has not been provided an informal interview relating to the revocation of his supervision. Doc. # 14-1, ¶ 2. Petitioner was told upon his re-detention that his passport had been obtained, but has since been informed that the request for his passport is still pending. Doc. # 12-1, ¶ 6; Doc. # 14-1, ¶ 6. Upon his detention, Petitioner was told he would be deported on January 14, 2026, but he was not deported on that date. Doc. # 12-1, ¶¶ 6, 9.

### III. LEGAL STANDARD

The standard for issuing a temporary restraining order and preliminary injunction under Federal Rule of Civil Procedure 65 is the same. *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020); *see also Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that a temporary restraining order and preliminary injunction involve "substantially identical" analysis). Like a preliminary injunction, a temporary restraining order is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

Under *Winter*, a plaintiff seeking a temporary restraining order must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD*

*Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014) (citing *Winter*, 555 U.S. at 20). Courts in this circuit also employ "an alternative 'serious questions' standard, also known as the 'sliding scale' variant of the *Winter* standard," *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021), in which the four *Winter* elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a temporary restraining order may be warranted where there are "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff," so long as the other *Winter* factors are also met. *Id.* at 1132.

## IV. DISCUSSION

Petitioner argues that he is entitled to be released from custody for two reasons. First, he argues that Respondents violated due process and INA regulations by once again reimprisoning him without notice or an opportunity to be heard. And Second, he argues that there is no good reason to believe he will be deported to Vietnam in the reasonably foreseeable future, and therefore he should be released pursuant to *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001).

### A.   Likelihood of Success on the Merits

As an initial matter, Respondents assert that the Court lacks jurisdiction to hear the instant Petition under 8 U.S.C. § 1252(g). However, as this Court has already held in this case, it is well settled that Courts have "jurisdiction to decide a purely legal question that does not challenge the Attorney General's discretionary authority[,] . . . even if the answer to that legal question [] forms the backdrop against which the Attorney General later will exercise discretionary authority." *Ibarra-Perez v. United States*, 154 F.4th 989, 996 (9th Cir. 2025) (internal quotation marks, citations, and alterations omitted); *Walters v. Reno*, 145 F.3d 1032, 1052 (9th Cir. 1998). Here, "because Petitioner challenges the lawfulness of his detention during the pendency of his removal proceedings, it is not a challenge to one of the 'three discrete events along the road to deportation' that § 1252(g) applies to." *Rodriguez Cabrera v. Mattos*, No. 2:25-cv-01551-RFB-EJY, 2025 WL 3072687, at *7 (D.

Nev. Nov. 3, 2025) (citing *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482) (1999)); *see Phakeokoth v. Noem*, No. 3:25-cv-02817-RBM-SBC, 2025 WL 3124341, at *3 (S.D. Cal. Nov. 7, 2025) ("Here, Petitioner does not challenge the legitimacy of his September 2004 order of removal. Rather, Petitioner challenges the legality of his present detention which does not require judicial review of ICE's discretionary authority to decide 'when' or 'whether' to execute a removal order."). Therefore, § 1252(g) does not deprive the court of jurisdiction.

    i.  Violation of Due Process Clause and INA Regulations

Petitioner first argues that he is likely to succeed on his Due Process claim for the same reasons put forth in his original ex parte application, and laid out in the Court's orders granting his first TRO and Preliminary Injunction.

Specifically, Petitioner states that he has not been provided with notice regarding the alleged violation of his supervised release, nor the opportunity to be heard regarding those allegations.

Although Petitioner has been released and re-detained since the Court's prior orders, Respondents still seem to claim that Petitioner's detention is due to his violation of his order of supervision on August 15, 2025.

Federal regulations provide that where a noncitizen has been "released under an order of supervision," and has "violate[d] any of the conditions of release," they "may be returned to custody." 8 C.F.R. § 241.13(i)(1). "Upon revocation, the alien will be **notified of the reasons for revocation** of his or her release. The Service will conduct **an initial informal interview promptly** after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." *Id.* § 241.13(i)(3)

1  (emphasis added); *See also id.* § 241.4(l)(1) (stating that a post-removal alien "who has
2  been released under an order of supervision or other conditions of release who violates the
3  conditions of release may be returned to custody . . . . Upon revocation, the alien will be
4  notified of the reasons for revocation of his or her release or parole. The alien will be
5  afforded an initial informal interview promptly after his or her return to Service custody to
6  afford the alien an opportunity to respond to the reasons for revocation stated in the
7  notification.").

8        Alternatively, the regulations provide that a noncitizen's release may be revoked,
9  "if, on account of changed circumstances, the Service determines that there is a significant
10 likelihood that the alien may be removed in the reasonably foreseeable future." However,
11 section 241.13(i)(3) continues to apply, requiring that upon revocation, "the alien will be
12 notified of the reasons for revocation of his or her release," and will be provided "an initial
13 informal interview promptly."

14       Here, Petitioner states he was not provided the reasons for the revocation of his
15 release upon his arrest on September 15, 2025, or his arrest on January 9, 2026.
16 Respondents do not seem to dispute this. *See generally*, Opp.

17       Because Respondents failed to follow their own procedures and violated Petitioner's
18 due process rights by re-detaining him without notice or an opportunity to be heard (i.e.,
19 no informal interview), he has shown a likelihood of success on this claim. *See Delkash v.*
20 *Noem*, No. 5:25-cv-01675-HDV-AGR, 2025 WL 2683988, at *5-6 (C.D. Cal. Aug. 28,
21 2025) (finding that government agencies are required to follow their own regulations and
22 finding that a petitioner is likely to succeed on the merits of his claim where the government
23 did not properly revoke his release pursuant to 8 C.F.R. §§ 241.4 and 241.3).

24       Respondents cite to *Sanchez v. Bondi*, No. 5:25-cv-02530-AB-DTB, 2025 U.S. Dist.
25 LEXIS 196639, at *13 (C.D. Cal. Oct. 3, 2025) for the proposition that the failure to follow
26 regulations does not negate the statutory authority provided by Section 1231. However, *as*
27 *previously pointed out by this Court* (*see* Doc. # 10 at 7, n.1), Respondents fail to note that
28 a subsequent decision in the same case held that, upon supplemental briefing, "the Court

is persuaded that the regulations constitute binding legal requirements for ICE's revocation process." *Sanchez v. Bondi*, No. 5:25-cv-02530-AB-DTB, 2025 WL 3651899, at *3 (C.D. Cal. Dec. 5, 2025). The Court warns that Respondents continued citations to precedent that has been overturned is a violation of Federal Rule of Civil Procedure 11(b)(2) and will be subject to sanction.

Respondents sole argument in opposition to this claim is that the appropriate remedy for a procedural deficiency would not be automatic release from custody, but rather to remedy the specific procedural deficiency. The Court agrees, which is why in its December 18, 2025 Order, the Court did not order Petitioner's immediate release, but instead ordered that "[r]espondents are enjoined from continuing to detain Petitioner unless he is provided with an informal interview to afford him an opportunity to respond to the reasons for revocation stated in the Notice of Revocation of Release dated August 24, 2025, pursuant to 8 C.F.R. sections 241.13(i)(3) and 241.4(l)(1) within seven calendar days of the filing date of this Order. Doc. # 10 at 9.

Notably, in response to the Court's December 18, 2025 Order, Respondents chose not to afford Petitioner with an informal interview, and instead released him. Respondents then subsequently re-detained him, again failing to follow the exact same procedures.

The Court therefore finds that, given Respondent's repeated failure to follow their own regulations, the appropriate remedy is an order that Respondents are enjoined from continuing to detain Petitioner unless he is provided with notice of the reason of his revocation and an informal interview to afford him an opportunity to be heard as to the revocation, pursuant to 8 C.F.R. section 241.13(i)(3) within seven calendar days of the filing date of this Order. Given the repeated nature of the violations, the Court will further order that, to the extent Petitioner is released from custody, Respondents are enjoined and restrained from re-detaining Petitioner without providing him an informal interview to afford him an opportunity to be heard, pursuant to 8 C.F.R. section 241.13(i)(3).

      ii.  Removal to Vietnam in the Reasonably Foreseeable Future

Petitioner next argues that he is likely to succeed on his *Zadvydas* claim. The Due Process Clause "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). And that because of that constitutional limitation, the immigration detention statute "does not permit indefinite detention." *Id.*; *see* 8 U.S.C. § 1231 ("Section 1231").

Section 1231 provides that when a noncitizen is ordered removed from the United States, the Attorney General must effectuate removal within 90 days. 8 U.S.C. § 1231(a)(1)(A). Detention is mandatory during the 90-day removal period. *Id.* at § 1231(a)(2)(A). If the removal period expires before the noncitizen has been removed, section 1231(a)(6) authorizes the Attorney General to continue the "post-removal-period detention . . . to certain categories of aliens who have been ordered removed, namely, inadmissible aliens, criminal aliens, aliens who have violated their nonimmigrant status conditions, and aliens removable for certain national security or foreign relations reasons, as well as any alien 'who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal.'" *Zadvydas*, 533 U.S. at 688; *see* 8 U.S.C. § 1231(a)(6).

Petitioner relies on *Zadvydas*, which held that a six-month period of detention was "presumptively reasonable," but that after the six-month period:

> once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* at 701.

The Court previously noted that INA regulations provide that the six-month period is re-started when conditions of supervision are violated. However, the Court will move on to the analysis of whether there is a significant likelihood of removal in the reasonably foreseeable future because: (1) Respondents do not contest that Petitioner has been detained for over six-months, (2) Respondents never gave Petitioner an opportunity to contest his alleged violation of his order of supervision, (3) it appears Respondents most recently re-detained Petitioner on the grounds that his removal is reasonably foreseeable, *not* on the ground that he violated his order of supervision, and (4) even if the period of time is presumptively reasonable, the Court could find that it is not reasonable here.

Although the Court agrees that Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future—given that he has been awaiting travel documents since 2021 and has been specifically told as of January 19, 2026 that his travel document is still pending—the Court finds that Respondents have responded with sufficient evidence to rebut that showing. Specifically, Respondents provided a declaration from a DHS, ICE, Enforcement and Removal Operations ("ERO") Deportation Officer, Tim Alcoser, who stated that upon review of DHS official documents, he has concluded that the Embassy of Vietnam issued a travel document for Petitioner, and that ERO is in receipt of the travel document. Doc. # 16-1, ¶¶ 2, 6, 7. Mr. Alcoser further stated that a "repatriation flight is tentatively scheduled for within the next three (3) weeks." *Id.* ¶ 8.

Petitioner argues that Mr. Alcoser does not have personal knowledge of the travel documents, and the travel documents themselves are not attached to the Opposition. Reply at 5. Petitioner further argues that there is a possibility of a mistake in the declaration. *Id.* at 6. However, Petitioner's speculation is insufficient for the Court to disregard a sworn declaration from a federal officer submitted to this Court. Mr. Alcoser states that all facts in his declaration are based on his "personal and professional knowledge, consultation with

other ICE personnel, and review of official documents and records maintained by DHS and other relevant sources obtained during the regular course of business." Doc. # 16-1, ¶ 2. Although Petitioner may dispute the credibility of this evidence, the Court finds that it is sufficient evidence to rebut Petitioner's showing.

The Court therefore finds that there is a significant likelihood of removal in the reasonably foreseeable future. And Petitioner has therefore not shown a likelihood of success on his *Zadvydas* claim.

### B. Irreparable Harm

Petitioner is likely to suffer irreparable harm in the absence of a TRO because he is being detained, which constitutes a loss of liberty that is irreparable. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).

### C. Balance of the Equities and Public Interest

Where the government is the opposing party, balancing of the equities and the public interest merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Thus, the Court asks whether any significant "public consequences" would result from issuing the preliminary injunction. *Winter*, 555 U.S. at 24.

As other courts have recognized, "the public has a strong interest in upholding procedural protections against unlawful detention." *Vargas v. Jennings*, No. 20-CV-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020). And the government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Accordingly, given the Court's determination that Petitioner is likely to succeed on the merits of his claim regarding his detention violating INA regulations (not providing him an informal interview), and in light of the irreparable harms inherent in the deprivation of constitutional rights and in ICE detention, this factor weighs in favor of Petitioner. Further, Respondents cannot claim any harm in following their own regulations.

**D.     Bond**

The security bond requirement of Federal Rule of Civil Procedure 65(c) is waived. The Court has "discretion as to the amount of security required, if any," and it "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).

## V.     CONCLUSION

For the foregoing reasons, the court GRANTS IN PART Petitioner's Application and ORDERS as follows:

1.     Respondents are enjoined from continuing to detain Petitioner unless he is provided with notice of the reason of his revocation and an informal interview to afford him an opportunity to be heard as to the revocation, pursuant to 8 C.F.R. section 241.13(i)(3) within seven calendar days of the filing date of this Order.

2.     To the extent Petitioner is released from custody, Respondents are enjoined and restrained from re-detaining Petitioner without providing him an informal interview to afford him an opportunity to be heard, pursuant to 8 C.F.R. section 241.13(i)(3).

3.     To preserve the Court's jurisdiction, respondents are enjoined from transferring, relocating, or removing Petitioner outside of the Central District of California pending final resolution of this case or further order of the Court, unless executing a final order of removal issued against Petitioner.

4.     This temporary restraining order shall take immediate effect and expires at 5:00 p.m. PT on February 19, 2026. The temporary restraining order may be extended for good cause or upon Respondents' consent.

5.     Respondents are ordered to show cause why a preliminary injunction should not issue. *See* C.D. Cal. L. R. 65-1. Respondents must file any written response to the Order to Show Cause no later than February 13, 2026. Failure to file a response by this deadline shall be deemed as consent to the granting of a Preliminary Injunction. Petitioner shall file a reply no later than February 17, 2026.

6. The Court shall decide, after reviewing the parties' papers, whether to hold a hearing on the Order to Show Cause or to take the Order to Show Cause under submission.

**IT IS SO ORDERED**.

Dated: 2/5/26

*Cynthia Valenzuela*
HON. CYNTHIA VALENZUELA
UNITED STATES DISTRICT JUDGE